**UNITED STATES of America, Appellee,**

v.

**Carlos VENTURA, Defendant–Appellant.**

**No. 677, Docket 97–1029.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1997.

Decided June 1, 1998.

---

Stephen J. Ritchin, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, New York City, Robert E. Rice, Assistant United States Attorney, Of Counsel), for Appellee.

David S. Hammer, New York City, for Defendant–Appellant.

Before: WINTER, LEVAL, Circuit Judges, and GOLDBERG, Judge.*

LEVAL, Circuit Judge:

Carlos Ventura appeals from a judgment of conviction entered on January 9, 1997, in the United States District Court for the Southern District of New York (Charles S. Haight, *Judge* ) following his guilty plea to a charge of managing and controlling an apartment used to store cocaine base in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2. Judge Haight calculated Ventura's sentencing range to be 37 to 46 months imprisonment, which included both an upward adjustment under U.S.S.G. § 3C1.1 for obstruction of justice and an upward departure under U.S.S.G. § 5K2.0 for a separate effort to deceive the court by submitting false documents. Ventura was sentenced to 46 months imprisonment. On appeal, Ventura argues

---

* The Honorable Richard W. Goldberg of the United States Court of International Trade, sitting by designation.

that the departure was impermissible. We affirm.

## BACKGROUND

On May 13, 1993, in the course of a search of an apartment occupied by Ventura, agents of the Drug Enforcement Agency (DEA) discovered numerous vials of crack cocaine. Ventura was arrested. On November 12, 1993, an indictment was filed in the United States District Court for the Southern District of New York charging Ventura with possession of more than 5 grams of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.

On June 10, 1994, Ventura entered into a plea agreement with the government according to which Ventura would plead guilty to a charge of violating 21 U.S.C. § 856(a)(2) by managing and controlling an apartment for the purpose of storing cocaine base. In the plea agreement, Ventura and the government agreed that pursuant to the then-current versions of U.S.S.G. §§ 2D1.1(c)(5) and 2D1.8, his base offense level should be 16 and that pursuant to U.S.S.G. § 3E1.1, Ventura should be entitled to a three-level reduction for acceptance of responsibility.

Pursuant to this agreement, Ventura pleaded guilty to a superseding information charging him with violation of § 856(a)(2). During his allocution, Ventura told Judge Haight that he was 21 years old. Judge Haight accepted the plea and scheduled sentencing for September 1, 1994.

When Ventura failed to appear for sentencing, a new arrest warrant was issued and an indictment was filed charging him with bail jumping in violation of 18 U.S.C. § 3146. On December 11, 1995, Ventura was re-arrested.

On June 13, 1996, Ventura and the government entered into a new agreement, modifying and superseding the previous agreement. The new agreement stipulated, as before, to a base offense level of 16, but denied entitlement to any reduction for acceptance of responsibility. In addition, the agreement provided that, because of Ventura's failure to appear on September 1, 1994 for sentencing,

he would receive a two-level enhancement pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, and the bail-jumping indictment would be dismissed. The new plea agreement thus provided for an offense level of 18. With a Criminal History Category of II, Ventura's sentencing range was calculated to be 30–37 months. In a conference before Judge Haight on the approval of the new agreement, Ventura told the judge he was 19 years old.

Sentencing was set for September 5, 1996. On that day, shortly before the appointed time, Ventura gave his attorney three documents. The first document, written in Spanish, purports to be a birth certificate issued by the National Registry of Persons of the Government of Honduras (the "birth certificate"); it states that certain specified Honduran Government documents indicate that Ventura was born on March 2, 1977. The second document, also written in Spanish and captioned "Autentica," purports to be a Honduran government document authenticating the signatures on the first document. The final document, written in English and entitled "Specific Authentication Statement," is signed by Michael Barkin, Vice Consul of the United States in Honduras. It states that the signature of "Jose E. Mejia Portillo" on the "annexed document" is authentic and that Portillo "is empowered by the laws of [Honduras] to execute that document." The documents were not attached to each other. In giving the documents to his attorney, Ventura represented that they were authentic. Ventura's attorney presented the documents to the Assistant United States Attorney (the "AUSA").

When the sentencing proceeding began, Ventura's counsel told Judge Haight that his client had provided him with "what appears to be an authentic birth certificate for Mr. Ventura," and that the documents had been given to the government to "check them out." Ventura's attorney further noted that if the documents were accurate, then "at the time that he committed the substantive crime of ... safeguarding the drugs in 1993, ... he was 16 years old. And when he took off, when he absconded in 1994, he was 17 years old. Both of which would make him a juve-

nile under the criminal code." *See* 18 U.S.C. § 5031 (defining juvenile as "a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday."). Judge Haight granted a continuance to allow the government to inquire into the authenticity of the documents.

On October 31, 1996, after investigation, the Assistant U.S. Attorney advised the court he had concluded the documents were not authentic. He stated Michael Barkin, the signatory of the third document, had been contacted and had indicated that the documents should have been "grommet[t]ed", or attached, together and if they were not, they likely were not authentic. Barkin also pointed out that the document bearing his signature only states that the named official, "Jose E. Mejia Portillo" has authority to execute "the annexed document"; the fact that Barkin's document was not attached to any other document "provid[ed] further indication that these are not genuine documents." The AUSA also noted that, in contrast with the proffered birth certificate showing Ventura's birth on March 2, 1977, Ventura had previously represented that he was born in 1974. He noted also that files from a prior immigration proceeding involving Ventura contained what purported to be a Honduran Government document giving Ventura's birth date as June 15, 1977.

After hearing from Ventura's counsel[1], and examining the documents, Judge Haight observed that "the difficulties that Mr. Ventura faces in ... establishing [h]is true date of birth are apparent":

First, the certification of vice-consul Barkin refers to and authenticates an official named Jose E. Mejia Portillo, but I agree with [the government] that the name of such [individual] appears nowhere on any of these documents. Secondly, the Barkin certification says in its first paragraph, in part, "I certify that the annexed document

is executed by the genuine signature and seal of the following named official," but my understanding is that when these documents were provided to [Ventura's counsel] and through [him] to the government, there was nothing physically annexed in the sense of being joined to it by a grommet or a staple or some such device at that time.... I also notice that ... you can see little round holes in the upper left-hand corner of [the documents] which indicates that at one time or another these documents may have been bound or fastened together to another document or documents, but there is absolutely no way of telling to what they were attached or having once been attached how and for what reason they came to be unattached.

Judge Haight nonetheless asked the government to make "further inquiry" and "enlarge the record" regarding the authenticity of the documents.

On December 23, 1996, the district court conducted another hearing, at which the government reported the results of its additional investigation. The government submitted two affirmations: one by Michael Barkin and the second by Gloria Zacapa, a U.S. State Department employee in the anti-fraud unit of the U.S. Embassy in Tegucigalpa. Barkin's affirmation stated that the authentication certificate bearing his signature

was grommetted to other pieces of paper immediately after I signed it. At least one of those pieces of paper contained the signature of Jose E. Mejia Portillo.... I have been told that the defendant ... has submitted the Certificate along with, but not attached to, other documents that purport to show his date of birth. I have also been told that those other documents do not contain a signature of Jose E. Mejia Portillo. In these circumstances I do not know whether the Certificate has any relationship to the other documents that have been submitted. If, in fact, the Certificate was not grommetted to the other documents and the other documents do not include the signature of Jose E. Mejia

1. Ventura's counsel acknowledged that the government had informed him of its conclusions the previous day and that he had conveyed this information to Ventura. According to Ventura's lawyer, "I essentially let him know what I believed [the government] would tell the Court" but Ventura nonetheless "persists in his contention that he was born in 1977."

Portillo, I would not view the Certificate as related to those other documents.

In addition, Barkin's affirmation stated that [i]t is my understanding that false birth certificates can be purchased easily and cheaply in Honduras. Accordingly, it is the general practice of the United States Embassy in Tegucigalpa not to rely on what appears to be a Honduran birth certificate, but to verify the information contained therein with the relevant Honduran officials.

Zacapa's affirmation stated generally that "documents with all the right seals and signatures, and with false information, are readily obtained for a small fee in Honduras. The office of the Honduran National Registry in Siguatepeque"—the city listed on the birth certificate proffered by Ventura—"is particularly well known to the anti-fraud unit [of the U.S. Embassy] as a source of fraudulent birth records." More specifically, Zacapa affirmed that she "telephoned the Honduran National Registry and asked employees of that office to check the information" in the birth certificate submitted by Ventura. In response, she was told that the government records specified in the birth certificate did not contain information about Carlos Ventura, but rather indicated that a person named Jose Santos Ventura Hernandez was born on May 11, 1977. "Accordingly," the affirmation stated, "I believe that the birth certificate . . . is fraudulent."[2]

After examining this evidence, Judge Haight stated, "[T]here appears to be reason to suspect . . . that Mr. Ventura has attempted to perpetrate a fraud upon the Court with respect to the date of his birth. If I should conclude that that is the case, then, of course, I will have to consider whether to increase Mr. Ventura's offense level by two levels for obstruction of justice or impeding the administration of justice as referred to in Section 3C1.1 of the Sentencing Guidelines." Ventura's counsel pointed out that the parties' plea agreement already contemplated that Ventura would receive a two-point enhancement for obstruction of justice (in connection with his flight). Judge Haight responded that he might consider "the possibility of fraudulent documents being submitted to the court in the context of an upward departure." Judge Haight then set sentencing for January 8, 1997.

At the sentencing hearing, Judge Haight began by stating his view that

there was an effort by Mr. Ventura to mislead the Court with respect to his age, that his effort to mislead the Court with respect to his age was motivated by a desire to obtain a more favorable sentencing formula, and that he backed up that effort by submitting to the Court a number of documents which were fraudulent and forged. Further, . . . as a result of that effort on Mr. Ventura's part, a number of entities were put to considerable additional effort. The United States Attorney had to deal with these claims, investigation had to take place in Honduras with respect to these claims, which involved officers of the Foreign Service of the United States. The Court was put to not insignificant additional effort, and so for that matter was [Ventura's counsel].

After hearing from counsel, Judge Haight then stated that this conduct justified a two-level enhancement pursuant to U.S.S.G. § 3C1.1. However, in view of the fact that Ventura was already receiving an enhancement under § 3C1.1, Judge Haight concluded that no further enhancement under that provision was available. Nonetheless, "in the rather unusual circumstances of this case," the judge concluded, "the [single] upward enhancement for obstruction of justice is not adequate" given the "more recent efforts on the part of Mr. Ventura to mislead the Court with respect to his age." Thus, citing U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b), Judge Haight determined that a two-level upward departure was warranted "to reflect

2. Zacapa stated that she had asked Honduran authorities to investigate the authenticity of the birth certificate apparently offered by Ventura in the immigration proceeding. On the basis of the information obtained from them, Zacapa concluded that this birth certificate was fraudulent as well. Zacapa further stated that, pursuant to her request, the Honduran National Registry provided her with a birth certificate for a Carlos Alberto Ventura Lucas; this certificate indicated a birth date of February 25, 1972.

the renewed and repeated and different form of obstruction of justice which was attempted here and which put the Court and the government to a considerable additional effort."

This departure resulted in a level of 20 and a sentencing range of 37 to 46 months. The court sentenced Ventura at the top of this range, to a term of imprisonment of 46 months.

## DISCUSSION

Ventura argues that the district court's upward departure was impermissible under the Guidelines. A sentencing court may depart from a sentence range otherwise prescribed by the Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). A court may depart "even though the reason for departure is taken into consideration in the guidelines (e.g., as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the guidelines level attached to that factor is inadequate." U.S.S.G. § 5K2.0.

■■■ "The standard for appellate review of a sentence that departs from the Guidelines is whether such a sentence is 'unreasonable.' By statute, reasonableness is to be judged in the light of 'the factors to be considered in imposing a sentence, as set forth in [18 U.S.C. § 3553(a) ] ... and ... the reasons for the imposition of the particular sentence, as stated by the district court....'" *United States v. Merritt*, 988 F.2d 1298, 1311 (2d Cir.1993) (quoting 18 U.S.C. § 3742(e)(3))(alteration in *Merritt*), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993).[3] In addition, we must "'accept the findings of fact of the district court unless they are clearly erroneous.'"

*United States v. Burns,* 104 F.3d 529, 536 (2d Cir.1997)(quoting 18 U.S.C. § 3742(e)).

■■■ To support his contention that the district court erred in departing upward based on Ventura's submission of fraudulent documents, Ventura first notes that this kind of conduct—obstruction of justice—falls under an express Guidelines provision. Under U.S.S.G. § 3C1.1, a court must give a two-level upward adjustment "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." As examples of conduct warranting the enhancement, the application notes to this section give, "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" and "providing materially false information to a judge or magistrate." U.S.S.G. § 3C1.1, Application Notes 3(c), 3(f).

The district court concluded that § 3C1.1 allows only a single, two-level upward adjustment for obstruction of justice, regardless whether the defendant committed multiple acts of obstruction.[4] Accordingly, once Judge Haight determined that the § 3C1.1 adjustment was warranted because of Ventura's failure to appear at sentencing, *see* U.S.S.G. § 3C1.1, Application Note 3(e) (listing, as an example of obstruction of justice, "willfully failing to appear, as ordered, for a judicial proceeding"), he deemed himself barred from imposing a further § 3C1.1 adjustment for Ventura's submission of fraudulent documents. Ventura maintains that the district court "use[d] the departure mechanism as a device for evading the restrictions imposed by the Guidelines."

We disagree. It is true, as Ventura suggests, that courts may not depart to avoid restrictions imposed by the Guidelines on the

---

3. The government contends that Ventura failed to raise his arguments against the upward departure in the district court and that, accordingly, the "plain error" standard of appellate review applies. *See United States v. Keppler,* 2 F.3d 21, 23 (2d Cir.1993)("Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of '[p]lain errors or defects affecting substantial

rights.'")(quoting Fed.R.Crim.P. 52(b)). We need not determine whether the plain error standard applies here, because we conclude that the district court was within its power in imposing the departure in any event.

4. We need not decide for this appeal whether this view of § 3C1.1 is correct.

use of adjustments. However, as noted above, it is also clear that a sentencing court may depart "even though the reason for the departure is taken into consideration in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." U.S.S.G. § 5K2.0. Indeed, "[b]oth the statute and the [Guidelines] Manual make clear that consideration of a factor by the Commission does not bar departure.... [U]nder the Sentencing Reform Act 'judicial review of a guideline's applicability is a matter of paramount importance. Review is not limited to determining whether the Commission merely "considered"—*i.e.,* mentioned—a subject. Rather, the test focuses on the *adequacy* of the consideration.' " *Merritt,* 988 F.2d at 1311 (quoting Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers,* 101 Yale L.J. 1681, 1699 (1992)). Thus, in *Merritt* we held that a sentencing court was not precluded from departing upward based on the defendant's failure to pay restitution and his concealment of assets even though such conduct is "mentioned and assigned potential consequences in several rules and comments relating to fraud, restitution, and fines." 988 F.2d at 1306.

Considering the "rather unusual circumstances of this case," Judge Haight expressly found that the upward two-level increase provided by § 3C1.1 for obstruction of justice "is not adequate." "[T]he crucial inquiry [in reviewing this determination] is whether the factor assertedly justifying departure was an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *Merritt,* 988 F.2d at 1306 (quotation marks omitted).

We think Judge Haight reasonably concluded that Ventura's case presented such circumstances. It is true that § 3C1.1 provides a two-level adjustment for obstruction of justice. However, the language of the guideline and commentary suggest that the rule was drafted without consideration that the defendant might engage in multiple episodes of obstructive conduct. Multiple acts of obstruction, especially when they differ in kind or have different obstructive objectives, can be found to fall sufficiently far outside the "heartland" conduct § 3C1.1 was designed to address that departures will be warranted. *Cf. United States v. Malpeso,* 115 F.3d 155, 169 (2d Cir.1997)("Courts have held that [U.S.S.G.] § 2A2.1 and similar guidelines that refer to increases based on injury to 'the victim' are predicated upon the risk to a single intended victim, and do not account for injuries and risks of injury to bystanders or multiple victims. For this reason, these courts have held appropriate upward departures based on aggravating circumstances where multiple victims or third-parties were injured in the offense, pursuant to U.S.S.G. § 5K2.0.") (citations omitted).

Departure may be especially justified where, as here, the defendant obstructed justice more than once through wholly discrete and unrelated acts. "Obstructing or Impeding the Administration of Justice" can describe a huge range of conduct, varying from expressing to an old friend the hope that his memory of long-past events may have dimmed to, at the other extreme, murdering witnesses. *See* § 3C1.1, Application Notes 3(a)-(i). In our view, the two-level enhancement provided by the rule is intended to apply to "heartland" instances of obstruction. *See* U.S.S.G., Ch. 1, Pt. A, 4(b). Instances that are "atypical" in that they vary by reason of degree of seriousness, or frequency of occurrence, from the norm may justify an upward or downward departure from the normal two-level adjustment.

In sum, if the nature of a defendant's obstruction departs sufficiently from § 3C1.1's heartland—because the defendant engaged in multiple instances of obstruction or because his obstruction is distinguished by its triviality or seriousness—so that the defendant's conduct is fairly seen as obstruction " 'of a kind or to a degree' not adequately taken into account" by § 3C1.1, a departure from the normal two-level enhancement may be appropriate. *See United States v. Ismoila,* 100 F.3d 380, 397–98 (5th Cir.1996)(affirming sentence that included a two-level enhancement under § 3C1.1 and a two-level departure, where defendant harbored a fugitive co-conspirator during defendant's trial

and urged her to flee), *cert. denied,* —— U.S. ——, 117 S.Ct. 1712, 137 L.Ed.2d 836, and —— U.S. ——, 117 S.Ct. 1858, 137 L.Ed.2d 1060 (1997); *United States v. Clements,* 73 F.3d 1330, 1341–42 (5th Cir.1996)(affirming sentence that included a four-level enhancement "based ... on a finding of at least four instances of obstruction of justice").

With these considerations in mind, we conclude that it was within the sentencing judge's discretion to depart by two levels, increasing the available sentence from a range of 30 to 37 months to a range of 37 to 46 months. As noted above, Judge Haight found that Ventura intended to mislead the court with respect to his age in order to secure a more favorable sentence and that he "backed up that effort by submitting to the Court a number of documents which were fraudulent and forged." Moreover, Ventura's misrepresentations caused considerable delay in his sentencing and required investigation by a number of officials of the United States and Honduran governments, including employees of the United States Attorney's office, the United States Embassy in Tegucigalpa, and the Honduran National Registry. Finally, as Judge Haight stated, "[t]he Court was put to not insignificant additional effort, and so for that matter was [Ventura's counsel]." In short, in addition to the harm inherent in submitting fraudulent documents to a court, Ventura's deceit clearly caused numerous government officials to expend substantial time and resources, delayed his sentencing, and imposed additional burdens on the district court.[5] In these circumstances, departure was wholly permissible.

Ventura also argues that the upward departure was not justified because it was based on unreliable evidence. In particular, he emphasizes that the Zacapa affirmation was based on hearsay from unnamed Honduran officials regarding information in their files. "[W]hen determining sentence, a sentencing court is free to consider hearsay evidence...." *United States v. Reese,* 33 F.3d 166, 174 (2d Cir.1994), *cert. denied,* 513 U.S. 1092, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995); *see also United States v. Sisti,* 91 F.3d 305, 312 (2d Cir.1996) ("The sentencing court's discretion is largely unlimited either as to the kind of information it may consider, or the source from which it may come.") (quotation marks, citations and alteration omitted); *United States v. Larson,* 112 F.3d 600, 605–06 (2d Cir.1997). Particularly in light of the additional time and expense that would have been involved in obtaining additional evidence from Honduras, and Ventura's failure to adduce any evidence suggesting that the Zacapa affirmation was unreliable, we think Judge Haight was well-justified in making findings on the basis of the evidence presented to him. Moreover, there was considerable evidence before Judge Haight in addition to the Zacapa affirmation, including the facial inconsistencies in the documents presented by Ventura, Barkin's affirmation, and Ventura's statement in his plea allocution in 1994 that he was 21 years old. We conclude that Judge Haight had ample proof to justify the finding that the documents were fraudulent.

## CONCLUSION

The judgment of the district court is affirmed.

---

5. Ventura also contends that because he submitted the materials (via his counsel) to the prosecutor instead of the court, and because the court did not in fact rely on the documents, he did not obstruct justice. This argument has no merit. Ventura's intent—as Judge Haight found—was to influence the court in its sentencing decision. That his effort was ultimately frustrated by the government's investigation does not shield him from the consequence of his effort to obstruct. We recognize that the success or failure of an attempted obstruction may be significant with respect to some categories of conduct. *See e.g.,* § 3C1.1, Application Notes 3(g), 4(a). However, § 3C1.1 establishes no general requirement that the obstruction succeed.