**UNITED STATES of America,
Appellee,**

v.

**David STEVENS, Defendant–Appellant.**

**Docket No. 98–1394**

United States Court of Appeals,
Second Circuit.

Argued: June 29, 1999

Decided: Sept. 27, 1999

Earle Giovanniello, Gorman & Enright, P.C., New Haven, Ct., for Appellant.

Jeremy H. Temkin, Assistant United States Attorney, (Mary Jo White, United States Attorney, Southern District of New York, Stanley J. Okula, Jr., and Ira M. Feinberg, Assistant United States Attorneys, on the brief), New York, N.Y., for Appellee.

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

David Stevens appeals from a sentence that the United States District Court for the Southern District of New York (Kevin T. Duffy, *Judge*) imposed on him. The sentence included a 293–month term of imprisonment and lifetime supervised release. The supervised release term represents an upward departure from the otherwise applicable range of four to five years. Because the district court's articulated reasons for the departure are inadequate, we vacate the supervised release term and remand for resentencing.

## BACKGROUND

This appeal is Stevens' third challenge to either his 1992 conviction for heroin possession and conspiracy or the resulting sentence. In 1992, we affirmed Stevens' conviction but vacated his sentence and remanded the matter to district court for several purposes. *See United States v. Stevens*, 985 F.2d 1175 (2d Cir.1993) ("*Stevens I*"). Pertinent to this appeal, we found that the district court erroneously (1) failed to allocate Stevens' sentence between the current offenses of conviction and the additional enhancement attribut-

able to Stevens' commission of the offenses while he was on release, *see* 18 U.S.C. § 3147; U.S.S.G. § 2J1.7; and (2) failed to give notice or an explanation for its "substantial departure" from the Sentencing Guidelines ("guidelines") range of four to five years supervised release, *see* 21 U.S.C. § 841(b)(1)(B); U.S.S.G. § 5D1.2(a), to impose a lifetime supervised release term. *See Stevens I*, 985 F.2d at 1189–90.

After the first remand, Stevens, his attorney and two government representatives entered into a stipulation that resolved both his offense level and his criminal history category. *See United States v. Stevens*, 66 F.3d 431, 434 (2d Cir.1995) ("*Stevens II* "). The sentencing range in the stipulation included a two-level upward adjustment to the offense level for obstruction of justice based on Stevens' perjury at trial and a one-level upward departure in criminal history category. The parties also agreed that "neither party will appeal a sentence by the Court that falls within the sentencing range/offense level calculated [in the Stipulation], even should the Court and/or Probation Department reach that range/offense level by a Guidelines analysis different from that set forth [in the Stipulation]." *Id.* (quoting the sentencing stipulation).

At the new sentencing, the district judge did not ask Stevens whether he had read, understood, signed, or agreed to the stipulation. *See id.* He sentenced Stevens to 292 months imprisonment for the offenses of conviction and one month imprisonment

for the enhancement, yielding a total of 293 months. *See id.* at 434, 435 n. 1. When the judge signed the judgment, he added a $2,000,000 fine and a life term of supervised release even though he had not inquired into Stevens' financial circumstances or given any reason for the upward departure. *See id.* at 434.

Stevens again appealed. We determined that the district court improperly apportioned the sentence by allocating more time to the offenses of conviction than the guidelines permitted.[1] *See id.* at 436. We also found that if Stevens voluntarily entered into the sentencing stipulation, it barred him from appealing the allocation of his sentence. *See id.* at 436. However, the record lacked any finding or other evidence from which we could determine that Stevens' waiver was knowing and voluntary. *See id.* at 437.

We vacated Stevens' sentence based on our findings and the government's concession that the district court did not follow our instructions regarding the fine and the supervised release upward departure. *See id.* at 433, 437–38. However, we denied Stevens' request to assign his case to a new judge. *See id.* at 438. We instructed the district court, among other things, to (1) on Stevens' motion, conduct a hearing on the voluntariness of the sentencing stipulation; (2) if Stevens prevailed in the hearing, at the government's election, either (a) vacate the entire sentencing stipulation or (b) properly allocate the sentence between Stevens' offenses of conviction

---

1. 18 U.S.C. § 3147 provides that a person convicted of committing a felony while on release shall receive an additional consecutive sentence of not more than ten years. The Sentencing Guidelines mandate that a person subject to this enhancement receive a three-level addition to the offense level. *See* U.S.S.G. § 2J1.7. An application note to that guideline provides that the sentencing judge must allocate the sentence between the underlying offenses and the enhancement. *See* U.S.S.G. § 2J1.7, Comment. (n.2). Stevens' offense level without the enhancement was 34 (guidelines imprisonment range of 168–210 months). *Stevens II*, 66 F.3d at 434. With

the enhancement, Stevens' offense level was 37 (guidelines imprisonment range of 235–293 months). *See id.* at 434–35. Thus, in this case Stevens received 292 months imprisonment for the underlying offenses although the maximum guidelines term was 210 months. We pointed out that "[b]y apportioning a sentence ... as the district court did ..., the effect is to increase the sentence attributable to the underlying offense beyond that authorized by the guidelines while, at the same time, adding a shorter consecutive sentence than would be warranted by the three-level increase specified in § 2J1.7." *Id.* at 436.

and the enhancement; and (3) give Stevens notice of any contemplated upward departure from the maximum guidelines range for supervised release and a brief statement of reasons for the departure. *See id.*

On January 22, 1997, Stevens' attorney at that time, Frank Handelman, and an Assistant United States Attorney appeared before the district court to discuss a possible hearing about Stevens' waiver of appeal rights. Handelman informed the district court that he had met with Stevens several times in prison and Stevens insisted on a hearing. Because Handleman probably would be a witness at this hearing, he requested to be relieved as counsel to Stevens. The court granted this request and appointed Lloyd Epstein as Stevens' new attorney. Handelman also requested an adjournment of the sentencing date because his client was on medication after back surgery. The district court said,

> Your client, you say, is presently under the influence of some type of drug. If he is going to remain under the influence for more than a week, I fully intend to send him back from whence he came to dry out.

Handelman responded, "He prefers, I think," and the district court interrupted,

> He would prefer to stay in the New York area for purposes of conducting his narcotics operation from the MCC by phone and by people coming in and out of there, but that's, you know, that's not the intent behind prisons.

The judge also excoriated the Assistant United States Attorney during this conference, at one point telling him, "[t]ake your hands out of your pockets unless you have something doing there," and at another time indicating that his superiors frequently went back on their word. Ultimately, the judge adjourned the hearing.

On February 21, 1997, Epstein wrote to the court to request a lengthy adjournment because Stevens' medicated condition prevented him from assisting Epstein to prepare for the hearing. Epstein subsequently requested two further adjournments for the same reasons. By letter dated November 7, 1997, the government informed the court that it had learned from defense counsel that Stevens no longer wished a hearing on the voluntariness issue and requested rescheduling of the sentencing. One day in advance of the rescheduled sentencing date of July 7, 1998, the prosecutor wrote the court another letter in which he again indicated that Stevens no longer wished to challenge the allocation of his sentence and that the only remaining issues were the fine and the duration of supervised release. Epstein wrote the court the same day to say that the government "accurately summarize[d] the issues and the positions of the parties."

At sentencing the next day, the court said of Epstein's letter,

> Yours arrived. In it you say, basically, that the only questions left are whether there should be a fine and whether he should get an upward departure for supervised release.

After Epstein confirmed this understanding, the judge did not ask Stevens whether he agreed. However, the judge did ask Stevens later if he had anything to say before the court sentenced him. Stevens replied that he did not.

After listening to argument, the court did not impose any fine but did reimpose the lifetime supervised release term, explaining that

> David Stevens showed a complete and total disrespect for society. His disrespect was of such magnitude, as far as I was concerned, as to require a lifetime supervised release.

> It should be noted, this is not because of heroin, or this is not merely because of his perjury; it is because of his total disrespect for society.

> It should also be noted that in 26 years on this bench, I have handed out lifetime supervised release maybe four times. It

is the unusual person who gets it, and an unusual person because he needs it, in the sense that society needs to have some protection from David Stevens.

The only specific factors that the court identified as leading to its conclusion were that Stevens "lied outrageously, with absolutely no regard whatsoever for the truth, the oath that he took, or with any other type of deference whatsoever to society and what society needs and demands" and that he did so "with a smirk and a laugh."

For a third time, Stevens has appealed. Epstein initially submitted a brief in which he questioned the supervised release departure and requested that we assign Stevens' sentencing to a different judge. Stevens himself then submitted a supplemental brief in which he argued that he did not receive effective assistance of counsel because Epstein failed to demand a hearing to determine whether Stevens knowingly and voluntarily waived his right to appeal the allocation of his prison term. New counsel now represents Stevens.

## DISCUSSION

### I. Supervised Release Departure

■ We accept a district court's factual findings on a sentencing issue unless they are clearly erroneous, and we accord particular deference to factual findings based on the judge's observation of trial testimony. *See United States v. Morrison,* 153 F.3d 34, 52 (2d Cir.1998). We review an upward departure to determine whether it is reasonable. *See United States v. Ventura,* 146 F.3d 91, 96 (2d Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 272, 142 L.Ed.2d 224 (1998).

Stevens argues that the district court erred by considering the same perjury both to enhance his offense level for obstruction of justice and to upwardly depart on the supervised release term. The government responds that (1) the basis for the upward departure was not perjury but rather the district court's well founded

fear that Stevens presented an unusual risk to society because his "demeanor during his trial testimony reflected antisocial behavior of such a magnitude as to warrant [the] conclusion that he would violate the law at the first opportunity he gets;" (2) Stevens' commission of the instant crime and another narcotics offense while on release and allegedly cooperating with the government—although not a reason that the district court cited—supports the conclusion that Stevens is unusually likely to be a recidivist; and (3) Stevens' perjurious testimony was so egregious that it merited a substantial upward departure, *see, e.g., Ventura,* 146 F.3d at 97.

■ "[C]ourts may not depart to avoid restrictions imposed by the Guidelines on the use of adjustments" such as obstruction of justice. *Ventura,* 146 F.3d at 96–97. Nevertheless, "a sentencing court may depart 'even though the reason for the departure is taken into consideration in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.' " *Id.* at 97 (quoting U.S.S.G. § 5K2.0). Similarly, although "[i]n general, issues of recidivism in sentencing are dealt with through the criminal history categories," the court also may depart vertically if it makes findings distinguishing the defendant from the typical recidivist. *United States v. Mora,* 22 F.3d 409, 414 (2d Cir.1994).

■ In considering the government's argument that Stevens' conduct falls outside the heartland the guidelines contemplate, we credit the district court's finding that Stevens committed perjury with "a smirk and a laugh," because this finding is not clearly erroneous. *See Morrison,* 153 F.3d at 52. Pointing to this finding, as well as to the court's conclusion that Stevens "exhibited a total antisocial behavior by" committing perjury, the government first argues that the district court reasonably concluded that Stevens' conduct at trial was indicative of his likely recidivism

and therefore that the upward departure was appropriate. However, we fail to see how these findings sufficiently distinguish this defendant from any other recidivist who has committed perjury at trial. *See Mora*, 22 F.3d at 414.

We also reject the government's contention that the district court's findings support the conclusion that Stevens' perjury was sufficiently egregious—because he concocted a whole tale rather than simply denying the government's allegations—that an upward departure was reasonable. The government relies primarily on our decision in *Ventura*, in which we held that "[m]ultiple acts of obstruction, especially when they differ in kind or have different obstructive objectives, can be found to fall sufficiently far outside the heartland conduct § 3C1.1 was designed to address that departures will be warranted." *Ventura*, 146 F.3d at 97. Although we noted in dicta that particularly serious conduct constituting an obstruction of justice might merit an upward adjustment, neither Stevens' creativity nor his smirk takes his perjury outside of the heartland. *See United States v. Sanchez Solis*, 882 F.2d 693, 695, 699 (expressing doubt that defendant's false testimony, which contained a denial and a fabrication "could amount to obstruction of justice 'to a degree' not taken into consideration by the Commission"). Therefore, departure based on the perjury was unwarranted whether considered as obstruction or as an indicator of likely recidivism.

■ The government also suggests that an upward departure for likely recidivism was appropriate because Stevens committed both the offenses of conviction and another narcotics offense while allegedly cooperating with the government after being arrested for his role in a stolen car ring. Two facts prevent us from accepting this argument. First, the district court did not make this finding. Second, the sentencing stipulation itself increased Stevens' criminal history category by one level because he committed the offenses of conviction while on release, making it unlikely that the court relied on this fact for its upward departure. Because the district court's stated reasons for departure are unreasonable, we vacate the supervised release portion of Stevens' sentence and remand for resentencing.

## II. Ineffectiveness of Counsel

■ The government argues that Stevens now cannot claim that his counsel was ineffective in failing to insist on a hearing concerning the voluntariness of Stevens' waiver of appeal rights. According to the government, Stevens himself waived his right to a hearing by remaining silent when Epstein confirmed the court's understanding of the only remaining issues. We agree.

■ Under certain circumstances, a criminal defendant may waive ineffective assistance of counsel claims by remaining silent. *See, e.g., United States v. Luciano*, 158 F.3d 655, 658, 660 (2d Cir.1998) (*per curiam*)(holding that defendant waived any complaint of "ethical problem" that his counsel's failure to visit him in jail presented when defendant remained silent when his attorney said, "I think that I have resolved my problems with my client"); *Dean v. Superintendent, Clinton Correctional Facility*, 93 F.3d 58, 62 (2d Cir. 1996) (stating in habeas proceeding that "a petitioner claiming ineffective assistance of counsel based on counsel's imposition of an insanity defense over petitioner's objection bears the burden of showing that he in fact objected").

Several factors convince us that Stevens himself waived any right to a hearing and therefore cannot complain that his attorney made the same waiver on his behalf. First, Stevens knew from his discussions with Handelman that the voluntariness of his waiver was an issue. Second, the district court clearly stated at sentencing that the only remaining issues were the fine and the upward departure. Third, Epstein said that this understanding was correct. Fourth, Stevens stood to gain little

by prevailing at a hearing. He will be in prison approximately 100 months less under the sentencing stipulation than he would have been under the district court's original 405–month sentence. *See Stevens I,* 985 F.2d at 1177. If Stevens had succeeded in proving the stipulation was involuntary, the court could—at the government's option—have voided the stipulation and made its own sentencing determinations. *See Stevens II,* 66 F.3d at 438. If the government did not elect to void the entire stipulation, Stevens' term of imprisonment would remain the same, and the only change would be a different allocation between the underlying offenses and the enhancement. Viewed in the light of the significant benefit to Stevens of leaving the stipulation intact, Stevens' silence despite his knowledge of the issues at stake and the court's clear statement of the issues to be considered, compels our conclusion that he knowingly waived his right to a hearing and there was no ineffective assistance of counsel.

### III. Request for Remand to a Different Judge

 Finally, we consider Stevens' request to assign his resentencing to a different judge. "As a general rule, even when a sentencing judge has been shown to have held erroneous views or made incorrect findings ... resentencing before a different judge is required only in the rare instance in which the judge's fairness or the appearance of the judge's fairness is seriously in doubt." *United States v. Bradley,* 812 F.2d 774, 782 n. 9 (2d Cir. 1987) (citation omitted). Remand to a different judge also may be appropriate where the district court repeatedly adheres to an erroneous view after we call the error to its attention. *See United States v. Brown,* 470 F.2d 285, 288 (2d Cir.1972); *United States v. Robin,* 553 F.2d 8, 11 (2d Cir.1977) (*en banc*) (*per curiam*) (discussing *Brown*).

Applying these standards, we find no basis for remanding Stevens' resentencing to a different judge. Although certain of the district court's remarks may have been intemperate, in context they do not indicate a bias against any particular party. Moreover, in both *Stevens I* and *Stevens II,* the district judge's error with regard to the imposition of lifetime supervised release consisted of a failure to provide Stevens with notice of his intent to impose that sentence or to place on the record his reasons for its imposition. *See* 985 F.2d at 1190, 66 F.3d at 438. The judge committed no such error in the resentencing currently before us, and in fact followed our direction on remand; we have simply found his reasons inadequate to support the departure. Finally, we note that "[a] judge who has presided over a lengthy trial often gains an intimate insight into the circumstances of the defendant's crime, which may prove uniquely useful in determining the sentence to be imposed." *Robin,* 553 F.2d at 11. Thus remand to a different judge in this instance would be particularly inappropriate because it would result in a loss of the benefit of this district judge's familiarity with Stevens' history and crimes.

### CONCLUSION

For the reasons discussed, we vacate the supervised release portion of Stevens' sentence and remand for resentencing.