**UNITED STATES of America,**
**Appellee,**

v.

**Marc ROBINSON and Mark**
**Nissenbaum, Defendants–**
**Appellants.**

Docket Nos. 00–1681(L), 00–1805.

United States Court of Appeals,
Second Circuit.

Jan. 8, 2002.

Lawrence F. Ruggiero, N.Y., NY, for Appellant.

**52**

Gerald M. Labush, N.Y., NY, for Appellant.

Michael S. Schachter, Ass't U.S. Att'y, SDNY, N.Y., NY, for Appellee.

Present KEARSE, MINER and PARKER, Circuit Judges.

### SUMMARY ORDER

These causes came on to be heard on the record from the United States District Court for the Southern District of New York, and were argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgments of said District Court be and they hereby are affirmed.

Defendants Marc Robinson and Mark Nissenbaum appeal from judgments entered in the United States District Court for the Southern District of New York following a jury trial before Denise Cote, *Judge*, convicting both defendants of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and conspiracy to commit wire fraud and to transport stolen property, in violation of 18 U.S.C. § 371; and convicting Robinson of transporting stolen property, in violation of 18 U.S.C. §§ 2314 and 2. Robinson was sentenced principally to 120 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay restitution in the amount of $420,000. Nissenbaum was sentenced principally to 87 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay a $50,000 fine. On appeal, defendants contend principally that venue in the Southern District of New York was improper, that their attorneys should have moved for severance, and that they were denied a fair trial because an expert witness usurped the function of the jury by giving testimony to the effect that defendants must have intended to commit fraud.

Defendants also contend that the court made various errors in calculating their sentences under the Sentencing Guidelines ("Guidelines"). Finding no basis for reversal, we affirm.

■ Defendants' challenges to venue are foreclosed by the recent decision of this Court in *United States v. Kim*, 246 F.3d 186, 191–92 (2d Cir.2001), which held that wire fraud is a "continuing offense" within the meaning of 18 U.S.C. § 3237(a). Here, defendants caused a fraud victim to make a $10 million wire transfer through a bank in the Southern District of New York. Venue in that district was thus proper.

■■ We also see no merit in defendants' contentions that their respective attorneys rendered ineffective assistance by failing to move for separate trials with respect to the various counts of fraud charged in the indictment. In order to succeed on such a claim, a defendant must show both (a) that counsel's failure to move for a severance constituted professional performance that was below an objective standard of reasonableness, and (b) that if such a motion had been made, the outcome of the proceeding would likely have been different, *see Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Neither defendant meets this test.

As to Robinson, who was tried on several fraud counts charging three fraudulent schemes involving different victims, we see no likely difference in the outcome of the proceeding. A severance motion would likely have been denied—and properly so—given that acts unified by "some substantial identity of facts or participants, or aris[ing] out of a common plan or scheme" may be tried together, *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989) (internal quotation marks omitted). Fur-

ther, even had the counts been tried separately, most of the evidence on all of the frauds would likely have been admitted against Robinson as probative of a pattern of fraud and deception. *See, e.g., United States v. Klein,* 340 F.2d 547, 549 (2d Cir.), *cert. denied,* 382 U.S. 850, 86 S.Ct. 97, 15 L.Ed.2d 89 (1965). As to Nissenbaum, who was charged in only one of the substantive fraud counts, we see no reason to infer that his attorney's decision to eschew a motion for severance was not simply a matter of reasonable trial strategy. The fact that the government attributed two of the three fraudulent schemes solely to Robinson could easily have been viewed as bolstering the claim of Nissenbaum that he too had been duped by Robinson and was not a coconspirator or a participant in any fraud.

■ The most serious contention advanced by defendants is that they were denied a fair trial when the government's expert witness, called at trial to explain complicated financial terms, gave his opinion as to what the financial notes and instruments involved in the scheme "really meant," stated that certain terms were "bogus" and had "no legitimate meaning," and testified that various words and time periods used in the papers defendants had given potential investors were "often used by wrongdoers who are trying to scam money." While we have no doubt that the admission of expert testimony to explain to the jury the complexities of financial instruments was well within the discretion of the trial court and was not "manifestly erroneous," *see, e.g., Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962) (trial court has broad discretion to admit expert testimony where it believes it would be helpful to the jury); Fed.R.Evid. 702, the testimony quoted was not necessary for responsive answers to the questions posed, and it was close to, if not beyond, the bounds of propriety. Any error, however, was undoubtedly harmless. Defendants themselves state that the jurors needed no expert testimony and were able to determine as a matter of simple common sense whether the schemes at issue were fraudulent. Further, the trial court properly instructed the jury that the expert's testimony was being offered "solely to help" the jury to "understand some terminology that you might find used in some documents that are being offered by one or more of the parties"; that it was "up to you and you alone ... to decide whether or not the testimony coming from this witness is of any assistance to you whatsoever"; and that "it is absolutely up to you and you alone, based on all the evidence or lack of evidence, to decide whether one of the defendants here on trial had any criminal intent, knowledge, purpose or understanding, even if you find that they were connected in some way to a particular document. And that's a hotly contested issue in this case and certainly not something that this expert can resolve in any way." We conclude that the expert's testimony, even if it crossed the line of propriety, provides no basis for reversal. *See, e.g.,* Fed R.Crim. P. 52(a) (an error or irregularity that does not affect a party's substantial rights does not constitute ground for reversal).

■ Defendants make a variety of challenges to their sentences, none of which has merit. Their contentions that their Guidelines offense levels should not have been increased pursuant to § 3B1.3 for abuse of a position of trust, principally because they in fact were not asset managers as they represented themselves to be, are foreclosed by this Court's recent decisions in *United States v. Hussey,* 254 F.3d 428, 432 (2d Cir.2001), and *United States v. Hirsch* 239 F.3d 221, 227–28 (2d Cir.2001).

The matter of whether the defendant occupies a position of trust within the meaning of this guideline is assessed from the perspective of the defendant's victims and does not depend on the defendant's actual status. *See, e.g., United States v. Hussey,* 254 F.3d at 432.

■■■■ Robinson contends that the district court improperly increased his offense level pursuant to Guidelines § 3C1.1 for obstruction of justice without making a finding, and without sufficient evidence, that he had absented himself from a trial session with the intent to obstruct justice. We disagree. Although an enhancement under that section is appropriate only where the court finds that the defendant "*willfully* obstructed or impeded, or attempted to obstruct or impede, the administration of justice," Guidelines § 3C1.1 (emphasis added), *see, e.g., United States v. Woodard,* 239 F.3d 159, 162 (2d Cir. 2001), "[c]ertain conduct ... such as intentionally failing to appear as required at judicial proceedings, is so inherently obstructive of the administration of justice that it is sufficient that the defendant willfully engaged in the underlying conduct regardless of his specific purpose," *United States v. Reed,* 49 F.3d 895, 900 (2d Cir. 1995); *see, e.g., United States v. Cassiliano,* 137 F.3d 742, 747 (2d Cir.1998); Guidelines § 3C1.1 Application Note 4(e) ("[t]ypes of conduct to which this adjustment applies [include] ... willfully failing to appear, as ordered, for a judicial proceeding").

Here, the court found that Robinson had left New York in violation of his bail conditions; that Robinson had failed to appear for the January 31, 2000 trial session, forcing an adjournment; "that Robinson's absence from the court on January 31 was willful"; that Robinson had failed to disclose his whereabouts, "in an evasive attempt to explain [his] absence"; and that Robinson had misrepresented the reason for his failure to return. These findings were plainly supported by the record. Although Robinson telephoned the court at 6:30 a.m. January 31 and left a message that he was "iced in" and would not be able to return for trial, he did not disclose the city from which he was calling. It was subsequently revealed that Robinson had gone to Washington, D.C., and there is no question that his bail conditions did not permit him to travel to Washington. Further, Robinson's statement that he had been "iced in" was contradicted by evidence that, on the day in question, there had been no flight delays or train delays and that shuttle airplanes had been running from Washington to New York beginning at 6 a.m. The court's findings, *inter alia,* that "[t]here was no reason" Robinson could not have appeared for trial on January 31, that "Robinson's absence from the Court was willful," and that "the record also supports a finding that Robinson specifically intended to obstruct justice," plainly warranted the enhancement for obstruction under § 3C1.1.

■■■■ Nissenbaum contends that the district court impermissibly departed from the Guidelines in finding that he should be placed in criminal history category III because, despite his lack of any prior convictions, there was a substantial likelihood of his recidivism. He contends that "the court's conclusion that he is a likely recidivist is based on visceral, subjective reaction and speculation, rather than findings of fact." (Nissenbaum brief on appeal at 44.) We disagree. The Guidelines permit the sentencing court to depart from the otherwise applicable criminal history category "[i]f reliable information" as to conduct that is unrelated but similar to the conduct leading to the conviction "indicates that the criminal history category does not adequately reflect ... the likelihood that

the defendant will commit other crimes." Guidelines § 4A1.3; *see, e.g., United States v. Hernandez,* 941 F.2d 133, 139 (2d Cir.1991). Here, a number of witnesses at a *Fatico* hearing testified that Nissenbaum had befriended them, had explained his (spurious) business transactions to them, had borrowed large sums of money from them, promising fantastic returns, and had then used their money for his personal expenses. After hearing the witnesses' testimony and considering the number of similar acts and the amounts of money involved, the court found that Nissenbaum had demonstrated a "well-practiced routine" in his frauds; that he made "intentional false representations that he was about to receive enormous sums of money from mysterious international banking transactions, from which he would repay" his friends' loans; that he "thought nothing of preying upon emotionally vulnerable and needy people," including those who "trusted him as a friend"; and that the "string of frauds is enormously probative of Nissenbaum's likelihood of recidivism. The fact that the frauds continued even after Nissenbaum was arrested, even after he was indicted, and even after he was convicted is particularly telling—it gives the court little reason to believe that he can be deterred from future crimes." These findings are supported by the record, and we see no abuse of discretion, *see* 18 U.S.C. § 3742(e), in the court's application of § 4A1.3 to Nissenbaum, nor any unreasonableness in the extent of the departure, *see, e.g., United States v. Stevens,* 192 F.3d 263, 267 (2d Cir.1999).

Finally, defendants' contention that, under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the amount of loss to be taken into account in calculating their sentences should have been alleged in the indictment and decided beyond a reasonable doubt by a jury, is foreclosed by this Court's recent decisions in *United States v. Garcia,* 240 F.3d 180, 183 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2615, 150 L.Ed.2d 769 (2001), and *United States v. White,* 240 F.3d 127, 135 (2d Cir.2001). Where, as here, the sentences imposed are below the statutory maxima for the offenses of conviction, *Apprendi* does not apply. *See, e.g., id.*

We have considered all of defendants' contentions on these appeals and have found in them no basis for reversal. The judgments of the district court are affirmed.