**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kelly WHITE, Defendant–Appellant.**

No. 00–5759.

United States Court of Appeals,
Sixth Circuit.

Dec. 18, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

PER CURIAM.

Defendant Kelly White appeals his conviction and sentence following a guilty plea to possession of a firearm by a convicted felon.

I.

On July 12, 1999, the police received a call describing an armed man, later identified as Defendant, at Denim and Diamonds, a nightclub in Memphis, Tennessee. Plain-clothes officers observed Defendant walk from the front of the club to some nearby bushes where he appeared to either retrieve or leave something. Defendant then approached a vehicle, spoke with the occupants, and directed the car to an open area of the parking lot. Defendant returned to the front of the nightclub, where he remained as several patrons left.

Defendant appeared to be holding something near his waist. The police officers sensed danger and approached Defendant. They patted Defendant down and found a loaded .9mm pistol in Defendant's waistband. Defendant was arrested and placed into a waiting van.

The police noticed that Defendant's head was bandaged with gauze and that blood had seeped through it. When the police asked Defendant about the injury, Defendant said that security guards inside the nightclub had mistakenly thought that he was involved in a fight and struck the back of his head. Defendant said that he tried to help his brother who was involved in the fight. According to police, Defendant also said that he was going to kill the security guards for disrespecting him. The police believed that Defendant was serious.

On December 20, 1999, Defendant was indicted on one count of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g). On March 9, 2000, Defendant pleaded guilty. During the sentencing hearing, Defendant denied telling the police that he was going to retaliate against the security guards. He said that after the security guards hit him, he was taken to an ambulance in the parking lot. He also said that, while he was being bandaged, several people talked about shooting him. According to Defendant, he then retrieved the gun from the trunk of his car and returned to the front of the club to wait for his brother and nephew to leave the club. Meanwhile, the people who talked of shooting him had left. Defendant claimed that he had not been drinking or taking drugs that evening.

Defendant was sentenced under U.S.S.G. § 2A2.1 (Assault With Intent To Commit Murder; Attempted Murder) with a base offense level of 28. U.S.S.G. § 2A2.1(a)(1). Defendant received a three-level downward adjustment because it was an attempt. U.S.S.G. § 2X1.1(b)(1) (Attempt). Defendant received another three-level downward adjustment for acceptance of responsibility. U.S.S.G. § 3E1

.1. Defendant had a total offense level of 22. Defendant had a criminal history category of VI based on 25 points, with a sentencing range of 84 to 105 months. However, the district court did not think that the sentencing range adequately reflected Defendant's criminal history and sentenced Defendant to the statutory maximum of 120 months incarceration. Defendant raises two issue on appeal.

## II.

■ First, Defendant claims that the district court committed error by applying U.S.S.G. § 2A2.1 (assault with intent to commit murder and attempted murder) with a base offense level of 28 rather than applying U.S.S.G. § 2A2.2 (aggravated assault) with a base offense level of 15. Defendant argues that his conduct did not rise to the level of attempted first degree murder. He contends that it was more similar to aggravated assault.

This Court reviews the district court's application of the sentencing guidelines de novo. *United States v. Hicks,* 4 F.3d 1358, 1361 (6th Cir.1993), and its factual findings for clear error. *Rogers v. Howes,* 144 F.3d 990, 992 (6th Cir.1998).

The facts of this case warrant application of U.S.S.G. § 2A2.1(a)(1). U.S.S.G. § 2A2.1(a)(1) requires a base offense level of 28 "if the object of the offense would have constituted murder." Application Note 2 of the Commentary to § 2A2.1 refers the sentencing court to 18 U.S.C. § 1111 for the definition of "first degree murder," which provides as follows: "Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poisoning, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing . . . is murder in the first degree."

In this case, Defendant stated to the police that he intended to kill the security guards. Further, he obtained his gun from the trunk of his car and waited for the security guards to leave the nightclub. His action was wilful, deliberate, malicious and premeditated and presumably would have resulted in the murder of the security guards if the police had not intervened. U.S.S.G. § 2A2.1(a)(1).

Defendant argues that U.S.S.G. § 2A2.1(a)(1) should not apply to him because his conduct was far less culpable than two particularly egregious cases where this Court affirmed its application. In *United States v. McDaniel,* 165 F.3d 29 (table) 1998 WL 661106 (6th Cir.1998), the defendant resisted arrest incident to a traffic stop, grabbed the police officer's gun, shot him five times, reloaded the gun, fled in his truck, and was apprehended only after a stand off. In *United States v. Curry,* 111 F.3d 132 (table) 1997 WL 178885 (6th Cir.1997), the defendant posed as a prospective buyer of a truck. While driving with the owner in the passenger sear, the defendant shot the owner in the head and stole the truck. Defendant argues that because his conduct was clearly not as culpable as that of these two defendants, the sentencing court should not have applied U.S.S.G. § 2A2.1(a)(1) to him. However, Defendant's analysis is flawed because neither *McDaniel* nor *Curry* purport to establish a minimum threshold that a defendant must satisfy before he can be sentenced under § 2A2.1(a)(1). As it is, we find that the district court properly applied U.S.S.G. § 2A2.1(a)(1) to Defendant in sentencing him.

■ Second, Defendant claims that the district court abused its discretion by departing upward from the guideline for extensive criminal history. Defendant argues that the district court already had adjusted his punishment by sentencing him under U.S.S.G. § 2A2.1 (first degree murder) instead of U.S.S.G. § 2A2.2 (aggravated assault).

The Sentencing Reform Act of 1984 provides that a district court may depart from the sentencing range set by the Sentencing Guidelines only when it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). Here, the district court departed upward because criminal history category VI, which requires only 13 criminal history points, did not adequately reflect Defendant's 25 criminal history points. *United States v. Osborne*, 948 F.2d 210, 212 (6th Cir.1991) (holding that 24 criminal history points was so high that even placement in category VI did not adequately reflect the seriousness of the defendant's criminal past).

Review of a sentence that departs from the Sentencing Guidelines consists of three steps. *United States v. Joan*, 883 F.2d 491 (6th Cir.1989). First, as a matter of law, the reviewing court determines whether the circumstances that the district court relied on are sufficiently unusual to warrant a departure. This is reviewed de novo. Second, the reviewing court factually determines whether the circumstances actually occurred. This is reviewed for clear error. 18 U.S.C. § 3742(e); *United States v. Moreno*, 933 F.2d 362, 374 (6th Cir.1991). Third, the reviewing court determines whether the direction and degree of the departure are reasonable. The reasonableness of a departure reflects several factors, including the seriousness of a defendant's criminal history, probability of recidivism, deterrent effect, protection of society, rehabilitation of the defendant, and punishment or retribution. *Joan*, 883 F.2d at 495.

Here, an upward departure is warranted under the three-step review process to adequately reflect Defendant's criminal history. First, excessive criminal history points and other criminal conduct may warrant a departure from the sentencing guidelines. *Osborne*, 948 F.2d at 212 (holding that 24 criminal history points was so high that even placement in category VI did not adequately reflect the seriousness of the defendant's criminal past). Second, Defendant's criminal history consisted of 25 criminal history points for 13 recorded offenses, which included both violent and non-violent felonies and misdemeanors. Defendant also had 7 felony motor vehicle habitual offender convictions and a state conviction for being a convicted felon in possession of a firearm. Third, imposing the statutory maximum of 120 months, instead of the guideline range of 84–110 months, was reasonable to adequately reflect the seriousness of Defendant's conduct. Criminal history category VI requires only takes 13 criminal history points; Defendant had 25 criminal history points. Furthermore, the district court discerned a high probability of recidivism based on Defendant's numerous offenses:

We want to do what is necessary to prevent danger to the public, and from the defendant's record in this case, although he seems like a nice guy here, apparently he has got some bad associates and some real bad judgment on a repeat basis. That all goes to say that in light of the great likelihood of recidivism in the case, the proper penalty in this case under that analysis that we have gone through in the case is actually the ten years. I can understand—and it is not that much difference between 110 months and a 120. I think if it was the broader range, I would probably say, well, it shouldn't be any more than ten years either. I know the cap is ten, but even if I was allowed to go up, I wouldn't do it, I think that the proper penalty is in the middle of what the range would have been except, of course, we have a restricted range. And the reason is that at some point we don't

have a lot to say in terms of hoping to salvage the defendant. I hope we do. I hope your life turns around and we don't have any more of these problems, but it is important that the public be protected.

Moreover, the district court followed the Sentencing Guidelines in departing from the guideline range. U.S.S.G. § 4A1.3 directs the district court to incrementally proceed through the sentencing table to the next level:

> Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.

U.S.S.G. § 4A1.3; *see United States v. Carr*, 5 F.3d 986, 993–94 (6th Cir.1993); *United States v. Pluta*, 144 F.3d 968, 979 (6th Cir.1998); and *Osborne*, 948 F.2d at 212.

Here, the district court made a three-level increase in Defendant's offense level resulting in a total offense level of 25, and a new sentencing range of 110–137 months. The statutory maximum capped the range at 120 months. After considering the intervening offense levels, the district court sentenced Defendant to 120 months of incarceration.

Accordingly, we AFFIRM the sentence of the district court.