**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0304n.06
Filed: April 19, 2005

**Case No. 03-5123**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| SHAUN TIMOTHY JONES, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: BATCHELDER and GIBBONS, Circuit Judges; BEER[*], District Judge.**

**ALICE M. BATCHELDER, Circuit Judge.** Defendant-appellant Shaun Timothy Jones appeals his conviction and sentence on six counts of possession or receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). Jones entered a conditional plea of guilty to all of these charges, reserving his right to appeal the district court's denial of his motion to suppress statements made to law enforcement agents on January 16, 2002, as well as "all tangible and intangible evidence seized from his residential dormitory room" on that same date. The court accepted his plea and sentenced him to 51 months imprisonment followed by three years of supervised release. He claims on appeal that the agents had not administered *Miranda* warnings before he made his initial statements to them; that those statements were involuntary and the product

---

[*]The Honorable Peter Beer, United States District Judge for the Eastern District of Louisiana, sitting by designation.

of unlawful custodial interrogation; and that the statements made and the consent to search signed after those warnings were given were involuntary as well. After the briefs were filed in this appeal, Jones filed a supplemental brief, challenging his sentence under the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Supreme Court subsequently decided *United States v. Booker*, 125 S. Ct. 738 (2005). For the reasons set forth below, we will AFFIRM the judgment of the district court denying Jones's motion to suppress. However, we conclude that the sentencing order must be VACATED and the matter REMANDED for re-sentencing.

## I.

On January 16, 2002, FBI Special Agent Stephen Lies and Memphis Police Officer John Scott Ledford went to the Methodist School of Nursing in Memphis, Tennessee, to execute an arrest warrant for Jones, issued by a court in Dyersburg, Tennessee, on a charge of aggravated sexual battery upon a child. Equipped with advice-of-rights and consent forms, as well as a laptop computer and portable printer, the officers went to Jones's dormitory room and knocked. They opened the door after hearing Jones call "come in," and they immediately noted that Jones was using his computer for instant messaging on the internet. Suspicious that he might be engaged in transmitting images of child pornography, the officers introduced themselves as law enforcement officers, and told Jones that they wanted to talk to him about a complaint involving the transmission of sexually explicit images. According to Lies, Jones immediately said "You're going to find bad pictures on my computer." Lies explained that the officers were not interested in images involving adults, and attempted to read Jones the advice-of-rights form, but Jones interrupted him and said, "Well, no, you're going to find bad pictures of children." Lies then read aloud the printed advice-of-rights form. He also asked Jones to read the form, and to sign it if he wanted to speak with the

2

officers. Jones read the form and signed the "waiver of rights" at the bottom of the form that stated: "I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present."

After signing the waiver of rights, Jones read and signed a consent-to-search form permitting the officers to search his computer to confirm that there was child pornography on it. Ledford did find child pornography on the computer, and Jones then provided a written statement to the officers, which included Jones's specific assertion that he wanted to cooperate completely with law enforcement. Ledford typed the statement on the officers' laptop and printed it on the portable printer, and , in the presence of both officers, Jones reviewed it, agreed that it was factually accurate, initialed the beginning and end of the statement, printed his name at the top, and signed it at the bottom.

The officers then questioned Jones about a story on the internet describing a sexual encounter between Jones and a minor female. Jones gave a signed, type-written statement admitting that the story was true, and confessing to his conduct with the minor. The officers then advised Jones that the images on his computer were contraband and the computer would have to be seized. They completed a property receipt, which he signed, and with his assistance they placed various items of evidence into their vehicle.

After his indictment on six counts of possession or receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B), Jones filed a motion to suppress the statements he had made to Agent Lies and Officer Ledford, as well as the evidence the officers seized from his dorm room. Jones claimed that his initial statements, given before the officers advised him of his rights, were not voluntary but were instead given in response to questioning by Agent Lies, and that he had

3

requested an attorney but one of the officers told him to "sign this [waiver of rights form] and we will make sure we get you [an attorney]." Both Agent Lies and Officer Ledford denied that Jones ever asked for, or indicated the need of, an attorney.

The magistrate judge credited the officers' testimony—reinforced by the signed waiver-of-rights and consent-to-search forms, as well as the signed admissions—over defendant's belated allegation that he had requested an attorney, and recommended that the district court find that "(1) defendant volunteered the first statement, and thus *Miranda* warnings were not required; (2) defendant was fully advised of his rights under *Miranda*, and fully understood those rights; (3) defendant voluntarily and consciously waived those rights and agreed to give statements to the officers; (4) defendant never requested, or suggested the need for, an attorney; (5) defendant voluntarily gave the statements in question." The district court adopted the magistrate judge's Report and Recommendation, and denied Jones's motion to suppress.

## II.

Jones argues on appeal that the district court erred in denying his motion to suppress. Specifically, Jones contends that his initial statements, made before the officers advised him of his "*Miranda* rights," *see Miranda v. Arizona*, 384 U.S. 436 (1966), are the inadmissible product of an unlawful custodial interrogation. Jones also argues that his later statements and consent to search, given after he was advised of his rights, "followed on the heels of the unlawful interrogation" and are therefore also inadmissable. Jones is wrong on both counts.

In reviewing a district court's suppression determinations, we review findings of fact for clear error, and legal conclusions de novo. *United States v. Lawrence*, 308 F.3d 623, 626-27 (6th Cir. 2002). Only two facts are in dispute here: whether Jones's statements that the officers would

4

find images of child pornography on his computer were spontaneous or were made in response to Agent Lies's questioning; and whether, after being advised of his rights, Jones asked for a lawyer. The magistrate judge heard the testimony of Jones and of both officers, and credited the testimony of the officers, concluding that the government had disproved the discrepancies in Jones's story by a preponderance of the evidence. *See Nix v. Williams*, 467 U.S. 431, 444 n.5 (1984) (quoting *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose *no greater burden* than proof by a preponderance of the evidence.") (emphasis added)). The district court did not err in adopting those findings of fact.

Neither did the district court err in its conclusions that the statements made by Jones prior to his being advised of his rights were voluntary and were not the result of an unlawful interrogation. Jones was not in custody at the time he made the statements that "You're going to find bad pictures on my computer" and "Well, no, you're going to find bad pictures of children," and no *Miranda* warnings were required. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995) ("*Miranda* warnings are due only when a suspect interrogated by the police is 'in custody.'"); *Stansbury v. California*, 511 U.S. 318, 322 (1994) (stating that an officer's obligation to administer *Miranda* warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody'") (internal quotation omitted).

The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Thompson*, 516 U.S. at 107 (quoting *Miranda*, 384 U.S. at 444). Two inquiries are relevant for this determination: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he []

5

was not at liberty to terminate the interrogation . . . ." *Id.* at 112. The circumstances surrounding Jones's statements do not suggest that a reasonable person would have felt he could not "terminate the interrogation." The officers entered Jones's dormitory room on Jones's invitation; they introduced themselves as law enforcement officers and told Jones what they wanted to talk with him about; they did not place Jones under arrest or otherwise restrict his freedom of action in any significant way; when Jones responded with an incriminating statement, they immediately attempted to advise him of his rights but Jones interrupted them and volunteered the statement that the "bad pictures" were of children. The officers imposed neither a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983). The totality of the circumstances indicates that Jones was not in custody when he made these statements.

Furthermore, even if Jones was in custody at the time he gave these statements, and he had not previously been advised of his *Miranda* rights, his statements are nonetheless admissible because they were volunteered. "'Interrogation' . . . must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Statements given freely and voluntarily are admissible whether or not a defendant has been informed of his rights. *See Miranda*, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."). The record supports the district court's conclusion that the officers were not interrogating Jones when he made those statements, and that they even attempted to *Mirandize* him at the outset of the conversation, only to be interrupted by his freely given admission. This is not the kind of "compulsory self-incrimination" that *Miranda*'s safeguards were designed to protect against. *See Michigan v. Tucker*, 417 U.S. 433,

6

444 (1974) (stating that *Miranda*'s "procedural safeguards [are] measures to insure that the right against compulsory self-incrimination [is] protected."); *see also Chavez v. Martinez*, 538 U.S. 760, 772 (2003) ("We have likewise established the *Miranda* exclusionary rule as a prophylactic measure to prevent . . . the admission into evidence in criminal cases of confessions obtained through *coercive custodial questioning*.") (emphasis added); *New York v. Quarles*, 467 U.S. 649, 686 (1984) (Marshall, J., dissenting) ("All the Fifth Amendment forbids is the introduction of *coerced* statements at trial.") (emphasis added).  The rule that Jones would have us follow would give any suspect the ability to immunize himself entirely by making incriminating statements before the officers could fully advise him of his rights.  Neither precedent nor the Constitution require such a rule.

The district court also found that Jones (1) voluntarily and consciously waived his rights and agreed to give statements to the officers; (2) never requested an attorney; and (3) gave free and voluntary consent for the officers to search his computer and dorm room.  Jones has failed to dispute the first two issues on appeal, but has attempted to bootstrap the third issue to his other arguments by postulating that his consent to search "followed on the heels of the unlawful interrogation." Because we find that there was no "unlawful interrogation," this claim also fails.

## III.

Jones also submitted a supplemental brief challenging the constitutionality of his sentencing under the Sentencing Guidelines in light of the decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).  Before an opinion was handed down by this court in Jones's case, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), in which it was held that the mandatory federal sentencing guidelines violated the Sixth Amendment by requiring judges to enhance the

7

sentences of defendants based on facts not found by a jury or admitted by the defendant. To remedy this problem, the Court excised from the Sentencing Act the provisions making the guidelines mandatory. *Id.* at 764. *Booker* then instructed reviewing courts to apply its Sixth Amendment holding and its remedial interpretation of the Sentencing Act to all cases on direct review. *Id.* at 769. *Booker* further mandated that reviewing courts apply ordinary prudential doctrines, such as plain error review, to determine if re-sentencing is warranted. *Id.*

Jones has not suffered a Sixth Amendment violation because no judge-found facts were used to enhance his sentence. The indictment contains the facts to which Jones now objects, and by pleading guilty, Jones admitted those facts. Nevertheless, he was sentenced under the mandatory guidelines system that no longer exists post-*Booker*. Because Jones did not object to this treatment in the district court, we conduct plain error review to determine if he must be re-sentenced. Under that test, there must be (1) error, (2) that is plain, (3) and that affects substantial rights. *United States v. Barnett*, 398 F.3d 516, 525 (6th Cir. 2005). If these three conditions are met, an appellate court may then exercise its discretion to notice the forfeited error if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Jones's sentence under the mandatory guidelines system that *Booker* extinguished constitutes error that is plain. *Id.* at 525-26. Under this circuit's precedent in *Barnett*, we must also presume that this error affected Jones's substantial rights–i.e., that it prejudiced him by causing him to receive a higher sentence–because to require Jones to prove he was prejudiced, as is typically the case under plain error review, would place "too exacting a burden" on him.[1] *Id.* at 528. Since the government

---

[1]Speaking only for myself, I note my disagreement with *Barnett*'s unwarranted departure from traditional plain error review. The Supreme Court has never presumed prejudice in plain error review nor did it suggest that we do so in *Booker*, *see Booker*, 125 S. Ct. at 769, and contrary to *Barnett*'s implication, the Supreme Court has never sanctioned placing the burden of proving prejudice on the government rather than the defendant. *See United States*

8

has not rebutted the presumption of prejudice by demonstrating that Jones would not receive a lower sentence on remand, we must find that the error affected his substantial rights. Finally, *Barnett* dictates that allowing a sentence imposed under the mandatory guidelines system to stand would be "fundamentally unfair" and thus seriously affect the fairness, integrity, and public reputation of the judicial proceedings. *Id.* at 530. Therefore, Jones's case must be remanded for re-sentencing.

**IV.**

For the foregoing reasons, we **AFFIRM** the district court's denial of Jones's motion to suppress, and we **VACATE** the district court's sentencing order and **REMAND** the case to the district court for re-sentencing.

---

*v. Olano*, 507 U.S. 725, 735 (1993) (refusing to address whether some errors "should be presumed prejudicial if the defendant cannot make a specific showing of prejudice"). In fact, in *Jones v. United States*, the Supreme Court explicitly refused to remove the burden of proving prejudice from the defendant in a *death penalty case* involving allegedly improper jury instructions. 527 U.S. 373, 394-95 (1999) ("Where the effect of an alleged error is so uncertain, a defendant cannot meet his burden of showing that the error actually affected his substantial rights."). Since the *Jones* Court did not think it improper to require a capital defendant to show prejudice that could only manifest itself in secret jury deliberations, I cannot see where we divine the authority to flip the prejudice burden in non-capital cases where the defendant at least has the benefit of a sentencing transcript as evidence of the judge's sentencing intent. Nevertheless, as *Barnett* is now binding precedent in this circuit, I am bound to follow its mandate unless and until a contrary rule is developed by this court *en banc* or by the Supreme Court.

**JULIA SMITH GIBBONS, Circuit Judge, concurring.** I concur in all of Judge Batchelder's opinion except footnote 1, which I decline to join.